MARSHALL, *Appellant*, v. THE WABASH RAILROAD COMPANY.

Division One, February 19, 1894.

Railroad: WRONGFUL DEATH: PRACTICE: PARTIES. Under the provisions of section 4425, Revised Statutes, 1889, giving the father and mother the right to join in an action for damages for the wrongful death of their unmarried minor child, and in case of the death of either parent

that suit may be brought by the survivor, the mother of a deceased illegitimate minor child may, in such case, sue alone, and the reputed father need not and should not be made a party.

*Appeal from Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*Ball & Ball* and *J. T. Simon* for appellant.

Under the pleading and evidence in this cause plaintiff made out against defendant a clear case of negligence, and the case should have been submitted to the jury. The instruction asked for by the defendant, and given at its instance by the court, taking the case from the jury, was, we think, manifestly erroneous, and we ask a careful consideration of this error. The chief points relied upon by the appellant for the reversal of this case is the giving of the instruction at the conclusion of the evidence offered by the plaintiff, withdrawing the case from the consideration of the jury. The plaintiff in this case is the proper, legal and only party entitled to maintain this action. The fact that she was never married, and that her deceased son, William H. Taylor, was born out of wedlock, was her child, and that Charley Taylor, the putative father of William H. Taylor, deceased, was not made a party to this suit does not in any way affect her rights as the mother of William H. Taylor. The putative father is not recognized either by the written or unwritten law and has no legal existence, and is therefore dead to all intents and purposes. He is only known, if known at all, as a matter of fact to be living, as a matter of law he has no existence, and is an unknown quantity. *Easly v. Gordon*, 51 Mo. App. 637; *Buel v. St. Louis Transfer Co.*, 45 Mo. 562; *Crockett v. St. Louis Transfer Co..* 52 Mo. 457 (affirming 45 Mo. 562).

*F. W. Lehmann* and *Geo. S. Grover* for respondent.

(1) Illegitimate relations are not within the meaning of the act giving a right of action on account of death resulting from a wrongful or negligent act. *Barker v. Railroad*, 91 Mo. 86; *McIntosh v. Railroad*, 103 Mo. 131; 1 Bacon's Abridgement, 757, 758; 2 Kent's Com., 212; 2 Roll. Abridgement, 785; Coke Litt., 123*b*; *Westminster v. Gerrard*, 2 Bulst. 346; *Priestly v. Hughes*, 11 East, 1; *Blake v. Railroad*, 18 Ad. & E. 93; *Dickinson v. Railroad*, 2 H. & C. 734; *Gibson v. Railroad*, 2 Ont. 658; *Good v. Towns*, 56 Vt. 410; *Harkins v. Railroad*, 15 Phil. 286; *Marshall v. Railroad*, 46 Fed. Rep. 269; *Bent's Adm'rs v. St. Vrain*, 30 Mo. 268; *Safford v. Houghton*, 48 Vt. 236; *Stevenson's Heirs v. Sullivant*, 5 Wheat. 207; *Barnes v. Allen*, 9 Am. Law Reg. (O. S.) 747. (2) In any event this suit can not be maintained by the mother alone, the father being alive. *Coover v. Moore*, 31 Mo. 574; *Phillpot v. Railroad*, 85 Mo. 164; *Brooks v. Danville*, 95 Pa. St. 158; *Vawter v. Railroad*, 84 Mo. 679; *Hubbard v. Topeka*, 34 Fed. Rep. 510; *Blake v. Railroad*, 10 Eng. Law & Eq. 443; *Railroad v. La Gierse*, 51 Texas, 189; *Railroad v. Spoker*, 59 Texas, 435; *Railroad v. Culberson*, 68 Texas, 664; *Railroad v. Needham*, 52 Fed. Rep. 371; s. c., 10 U. S. App. 129; s. c., 3 U. S. C. C. App. 129.

BLACK, P. J.—This is an action under section 4425, Revised Statutes, 1889, generally known as the second section of the damage act, to recover $5,000 for the death of William H. Taylor. Besides a general denial, the answer states that the deceased was the illegitimate child of plaintiff and that the father is still living.

The deceased was about sixteen years old at the

time of his death.   He was the illegitimate child of the plaintiff and one Charles Taylor.   The latter, though living, was not made a party to this suit.   William H. Taylor  died from  injuries  occasioned  by the negligence  of the servants  of the defendant in  running its train.   The trial court directed a verdict for defendant. The questions presented here are whether the mother and her illegitimate child are within the meaning of the statute; and, if they are, whether the mother of such a child can prosecute the suit without joining the father of such child, the father  being alive.

Section 4425 as it appears in the Revised Statutes of 1855, provides that whenever  any person shall  die from any injury occasioned in the manner and under the circumstances there stated, the negligent corporation or person shall "forfeit and pay" for every person so dying, the sum of $5,000, "which may be sued for and recovered," *first*, by the husband or wife of the deceased; or, *second*, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased; or, *third*, if such deceased be a minor and unmarried, then by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor."   It was amended in 1885 under the title, "An act to amend sections  *  *  *  extending the rights of adopted children and their parents by adoption," so as to  describe the persons who may sue as follows:

"*First*, by the husband or wife of the deceased; or, *second*, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased, whether such minor child or children of the deceased be the natural born or adopted child or children of the deceased;

*  *·  or, *third*, if such deceased be a minor and unmarried, whether such deceased unmarried. minor be a natural born or adopted child  *  *  *  then by. the father and mother who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor." Laws 1885, p. 153.

Counsel for the plaintiff place some reliance upon the words *natural born child* brought in by the amendment; but we can not see that these words are of any aid to the plaintiff. The term *natural born* as sometimes used means bastard; born out of wedlock. Bouv. Dict.; Cent. Dict. On the other hand it has been held that *natural* in a statute providing that adopted children shall have all the rights of natural children means legitimate. 9 Am. Law Reg. (O. S.) 747. Here the words are used simply to show that adopted children and the adopting parents are to have the benefit of the act, the same as in case of children by procreation. The title of the act indicates very clearly the object which the legislature had in view, namely, to "extend the rights of adopted children and their parents by adoption." It was believed the law as first enacted did not include adopted children or their parents by adoption, and hence the amendment. The words natural born child or children as here used mean, and mean no more than did the word child as it appeared in the act before the amendment.

The questions presented by this record are new in this court, and but few precedents are found in other courts. *Dickinson v. Railroad*, 2 H. & C. (Exch.) 735, was an action brought under the statute of 9 and 10 Vic. c. 93, known as Lord Campbell's Act, passed in 1846. That act provides "that every such action shall be for the benefit of the wife, husband, parent and children of the person whose death shall have been so

caused, and shall be brought by and in the name of the executor or administrator of the person deceased," the amount recovered to be divided among the parties as the jury shall direct. The suit was brought in behalf of the mother and an illegitimate child of the deceased. It was held damages for the benefit of the child could not be recovered. POLLOCK, C. B., said: "But beyond all doubt in the construction of this act of parliament the word 'child' means legitimate child only." That case was decided in 1863, and was cited and approved in *Gibson v. Railroad*, 2 Ontario, 658, and, so far as we are advised, is the law in England at this day. See, also, *Harkins v. Railroad*, 15 Phil. 286, and *Marshall v. Railroad*, 46 Fed. Rep. 269.

*Muhl's Adm'r v. Railroad*, 10 Ohio St. 272, was based upon a statute of that state which provided that the action should be brought by the personal representative of the deceased, and that the amount recovered should be distributed between the "widow and next of kin, in the proportion provided by law in relation to the distribution of personal estates left by persons dying intestate." The deceased left a lawful sister and and an illegitimate son. The trial court nonsuited the plaintiff because the child alleged in the petition to be next of kin was an illegitimate child. The supreme court reversed this ruling, holding that the suit was properly brought in the name of the personal representative, and the question whether the child or sister should be regarded the next of kin did not in any way affect the cause of action, because the right of action existed in favor of the administrator in either case. It is then said: "But it is quite evident that the nearness or remoteness of kin on the part of the son of the deceased mother, neither in fact, nor by any canon of descent under the statute, depended at all upon the circumstance of his being born within or without lawful wed-

lock." This observation would seem to imply that the illegitimacy of the child did not defeat a right of action brought in its behalf. The ruling, we take it, stands on the ground that the fruits of the judgment would be distributed the same as personal property of the deceased, and under the laws of that state an illegitimate child would share in its mother's personal estate. The case does not, therefore, give us much aid in the disposition of the one in hand.

The case of *Dickinson v. Railroad, supra,* was evidently decided on the ground that when a statute speaks of a child or children it means legitimate children; and this for the reason that by the common law a bastard is looked upon as the child of nobody. "He can not be heir to anyone, neither can he have heirs, but of his own body; for being *nullius filius*, he is therefore of kin to nobody, and he has no ancestor from whom any inheritable blood can be derived." 1 Bl. Com. 459. Kent uses substantially the same language. 2 Kent's Com. [13 Ed.], 212. It is because of this want of [inheritable blood that the words "child" and "children" in statutes relating to descents and distributions are generally held to mean lawful children only. *Bent's Adm'r v. St. Vrain,* 30 Mo. 270; 3 Am. and Eng. Encyclopedia of Law, 230.

But this want of inheritable blood constituted the chief and principal incapacity of a bastard. 1 Bl. Com. 459. Says Kent: "The rule that a bastard is *nullius filius* applies only to the case of inheritances. It has been held to be unlawful for him to marry within the Levitical degrees; and a bastard has been considered to be within the Marriage Act of 26 Geo. II., which required the consent of the father, guardian or mother, to the validity of the marriage of a minor. He also takes and follows the settlement of his mother. With the exception of the right of inheritance and

succession, bastards, by the English law, as well as by the law of France, Spain and Italy, are put upon an equal footing with their fellow subjects; and in this country we have made very considerable advances towards giving them also the capacity to inherit, by admitting them to possess inheritable blood." 2 Kent's Com. [13 Ed.], 214.

The harsh rules of the common law have been modified by express statute in this state, so that the mother is declared the natural guardian of her illegitimate child. R. S. 1889, sec. 5279. And section 4473 declares: "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, and such mother may inherit from her bastard child or children in like manner as if they had been lawfully begotten of her."

This section does not, it is true, legitimate a bastard, but it concedes to him inheritable blood on the mother's side. Instead of being the son of nobody, as at common law, he has a mother who is recognized as such by our laws. The duty of supporting him rests upon her, and she is entitled to his services during minority. As the chief and principal incapacity of of a bastard has been removed so far as he and his mother are concerned, there seems to be no good reason why a statute which speaks of parents and children should not apply to a mother and her illegitimate child, unless there is something in the statute or subject about which it treats to show that it was not intended to apply to persons standing in that relation.

To say the mother of an illegitimate child can not maintain a suit under the second section of the damage act is to say she can not maintain one under the third and fourth sections, which do not fix the damages at a stated amount, but allow compensatory damages not exceeding $5,000; and it is to say an illegitimate child

can not recover under either section for the loss of its mother. We can not believe the legislature ever intended such results. As the mother of an illegitimate child is by our law deemed and treated a mother, we think she is within the meaning of the damage act and that the father of such child is not. This is but giving effect to what we understand to be the legislative policy of this state. It follows that the plaintiff can maintain this suit and that the reputed father need not and ought not to made a party. All concur.