ALABAMA & VICKSBURG RAILWAY COMPANY *v.*
SUSAN WILLIAMS.

1. STATUTORY CONSTRUCTION.

Statutes making innovations on the common law should be strictly construed.

2. BASTARDS. *Natural mother. Inheritance. Code* 1892, § 1549.

Under code 1892, §.1549, providing for inheritance of illegitimates in certain cases, a mother does not inherit from her bastard child.

3. SAME. *Death of person. Action for. Lord Campbell's act. Laws* 1898, p. 82.

A mother cannot maintain an action for damages caused by the wrongful killing of her bastard son. The act of 1898 (laws 1898,

78 Miss.—14.

p. 82), creating causes of action for the death of a person (like Lord Campbell's act, its prototype), confers the right to sue only on legitimate relatives. *Illinois, etc., R. R. Co.* v. *Johnson,* 77 Miss., 727, approved.

FROM the circuit court of Rankin county.

HON. JOHN R. ENOCHS, Judge.

Susan Williams, the appellee, was the plaintiff in the court below; the railway company, appellant, was defendant there. The suit was for the death of Overn Foreman, who was killed by the cars of the railway company in the city of Vicksburg, February 1, 1899. On the trial of the case in the court below, it appeared in evidence that the deceased was an illegitimate son of the plaintiff. The defendant asked a peremptory instruction in its favor, which the court below refused to give. The trial resulted in a verdict and judgment in plaintiff's favor for $1,500, from which the defendant appealed. The case was tried in the court below before the decision of the supreme court in the case of *Illinois, etc., R. R. Co.* v. *Johnson,* 77 Miss., 727.

*Mc Willie & Thompson,* for appellant.

It has been settled in this state that a bastard is not within Lord Campbell's act or our statute (laws 1898), of which Lord Campbell's act is the prototype. *Illinois, etc., R. R.* v. *Johnson,* 77 Miss., 727.

It is useless to argue that question. The recent able opinion of this court settles it, and the scope of the opinion reaches this case. In fact, § 1549, code of 1892, much relied upon in the Johnson case, on the subject of distribution and descent of estates, does not in any sense provide for inheritance by the mother from her bastard child, and the question of such inheritance is left by our statute exactly as it was at common law, and the mother does not inherit at all, does not inherit anything, from her illegitimate offspring. To permit such an inheritance would be contrary to the policy of the law. It

would be counter to the policy of even § 1549, code, for it would reward the guilty adulteress, when the statute intended only to remove an apparent, probably a real, hardship from the innocent child. The peremptory instruction asked should have been given, upon the idea that the law was just as this court has announced it to be in the Johnson case.

*Theodore McKnight*, for appellee.

Did the legislature, when it inserted in our statute the words, "or mother," mean mother in that restricted sense which limited it to legitimate mothers, or did it mean to use the word in that broad sense which includes both the natural and the legitimate mother? The answer to the question involves a settlement of the proposition involved in the instruction under consideration. It does not depend upon a question of inheritance or of inheritable blood. There is nothing in the act of 1898, or in any of its prototypes, all the way back to Lord Campbell's act, which makes the right to sue in such cases inheritable. See opinion in *Illinois, etc., R. R. Co. v. Johnson*, 77 Miss., 727, where, speaking of the statute of descent and distribution, it is said, "there is nothing in the statute of descent and distribution making any right of action inheritable either by legitimates or illegitimates," and again, speaking of Lord Campbell's act and of the act of 1898, it is said, "neither act deals with inheritance nor makes any mention of illegitimates."

What was the status of a bastard at common law? The answer is this: "The same as every other man, except as to his right of inheritance." Blackstone's Com., book 1, *459; 4 Kent's Com., *214.

The word "mother" had at common law exactly the same meaning when applied to the mother of a bastard as it had when applied to the mother of a legitimate child, except as to inheritance alone. If the common law had been that a "mother" might sue for the death of her child, it would have

meant that the mother of a bastard could sue, when it is admitted there is no question of inheritance involved in the right to sue.

The legislature of this state has never said that only the legitimate mother may sue, but has said that the "mother" may sue. And to hold that the word, "mother," used in the act of 1898, p. 82, shall, under the common law and the statutory law, be construed to mean "legitimate mother," would, beyond all question, be to make innovation on the common law by judicial legislation.

In the Johnson case the question was as to the right of a bastard half-sister to sue for the death of a bastard half-sister, and this court held that she did not have the right. There is a vast difference between that case and the one at bar.

1. The right to sue in that case was claimed to be based upon the right of inheritance.

2. There was no right of inheritance between bastards under the common law.

3. The statute of descent and distribution does not give the right of inheritance to a bastard from his brothers and sisters, and does not recognize the bastard as having a brother or sister, while it does recognize him as having a mother. The language is peculiar and is as follows: "Shall inherit from their mother and from her other children." Note the language. It does not say, from their brothers and sisters, but speaks of them as the bastard's mother's other children.

Sophronia Johnson's right to sue depended, not upon her right of inheritance, but whether she was included in any class mentioned in the act of 1898 upon whom the right to sue was thereby bestowed; and, since our statute of descent and distribution does not recognize a bastard as having either brother or sister, the decision of the court in that case, in the absence of any other statute recognizing such relationship, would be correct.

As to the right of the mother to sue for the death of her

illegitimate child, see vol. 8 (2d ed.), Am. & Eng. Enc. L.,
895 (2), and *Marshall* v. *Wabash, etc., R. R. Co.*, 120 Mo.,
275.

There are a few decisions of some courts, and perhaps some
text writers, cited as authority for the opposite view of this
question, but, upon a careful and studious investigation, they
will be found, no doubt, to be under peculiar statutes, or cer-
tainly not in accord with the law as it exists to-day in this
state.

*A. J. McLaurin,* on same side.

This suit was brought under the act of 1898 (laws 1898, p.
82), which is the law of this state.    Lord Campbell's act is
not law here.    The two acts are not identical, but are dissim-
ilar in several respects.    If the British courts have violated a
rule of the common law in expounding Lord Campbell's act, it
is surely no reason why our court should do so in expounding
our act.

Defendant's proposition amounts to this: " Yes, we negli-
gently killed the boy, but what of it ?   He was a bastard, and
the act of 1898 only intended to protect the lives of children
born in lawful wedlock."    What a defense!   The statute says,
" whenever the death of any person shall be caused," etc.
Do the words, "any person," include an illegitimate?   That
is the only question; for, if the words, "any person," include
a bastard, his mother is authorized to sue.    Hardly can any
man say that the legislature would be mindful of the lives of
legitimate children and heartlessly refuse to care for the lives
of illegitimates.    "Any person" includes an illegitimate, unless
an illegitimate is not, in law, regarded as a person.    No court
on earth ever held that an illegitimate is not a person.    They
are held not to be the children of anybody for purposes of
inheritance and succession; nothing more.    1 Blackstone, 459;
2 Kent, 214.

I reject Black's Law and Practice on this question, because

the author is either partial and unfair or he has given ' the question no investigation. He cites 46 Fed. Rep. for a proposition that the court expressly said was not properly before it, and does not cite the decision of the supreme court of Missouri against the proposition when the same case was before that court. The Missouri case was decided long before Black's publication. *Marshall* v. *Wabash Ry. Co.*, 120 Mo., 275.

Argued orally by *R. H. Thompson*, for appellant, and by *Theodore McKnight* and *A. J. McLaurin*, for the appellee.

CALHOON, J., delivered the opinion of the court.

There is no reason for overruling the case of *Illinois, etc., R. R. Co.* v. *Johnson*, 77 Miss., 727, s.c. 28 So. Rep., 753, and the conclusion reached in that case should be the same in this. At the common law an illegitimate could not inherit from his own mother or any one else, and he could not transmit by inheritance, except to the heirs of his own body. He might become the *propositus* of a new line of descent from himself, but, until a child was born to him in wedlock, he had no kindred—no father, no mother, no sister, no brother—and nothing which he did not acquire. All kinship was denied, and no blood connection recognized, except that the courts, for the actual protection of his life as a person in the body politic, would ascertain the natural mother, and, for the conservation of the morals and decencies of society, would look into his natural blood kinship in vindicating the statutes against incest. Statutes denouncing penalties reached him, as they did all other persons, but statutes could not be availed of which would improve his condition, unless they expressly included illegitimates in their terms. The reason was to discourage adulterous connections.

In *Edwards* v. *Gaulding*, 38 Miss., 165, our court announces the rule of strict construction, which runs through all our reports, of all statutes making innovations on the common law,

and applies that rule of construction to a statute conferring rights on illegitimates. That statute was that, "hereafter all illegitimate children shall inherit the property of their mothers, and from each other," etc., and the court held that even the legitimate children of a bastard dying before the act could not inherit from an illegitimate uncle or aunt dying after its passage. Previously to this decision our court had been equally as explicit in *Porter's Heirs* v. *Porter*, 7 How. (Miss.), 110, 111. It holds that bastards are not comprehended under the word, "children," in our statute of descents; that those born out of wedlock are not numbered among children; that the word, "children," in a will, where there were both legitimates and illegitimates, means legitimate children only; that illegitimates could not be the "stock through which consanguinity could be traced;" that they could not inherit from their mother, and that "it is the policy of the law to sustain the institution of marriage as the surest and safest groundwork on which society can rest, and to make that the only source from which inheritable blood can flow."

Discussion might well end here, on the decisions of our own state. But the doctrine is settled in the same way in nearly all the states, if not all, which treat of it. In Vermont a statute gave a right of action to any one "in any manner dependent on" a person injured or dying by intoxicating liquors, against the seller of the intoxicant. In *Good* v. *Towns*, 56 Vt., 410, a man named Good died from intoxicating liquor, and Mary M. Good sued the seller, averring that she had lived with Mr. Good as his wife, but not in lawful wedlock, for many years, and had borne him eight children, and that he had acknowledged them as his, and her as his wife, in the community, though he was in fact married to another woman, who lived in Massachusetts, and who had, long before, been through the ceremony of marriage with another man. Mary M. Good was joined in her suit by an illegitimate minor daughter of her unlawful connection with Mr. Good, also dependent on him for

support. The court denied relief on the ground that the legislature, by the word, "dependent," meant "legally dependent," which could not refer to an adulteress or an illegitimate, without express mention, and that the act, being an innovation on the common law, must be strictly construed, and so as not to violate the public policy of discouragement of illicit intercourse. This is an extreme case, but the ruling was manifestly right.

In *McDonald* v. *Railway Co.*, 144 Ind., 459, s.c. 43 N. E., 447, 32 L. R. A., 309, 310, Judge Monks collates the authorities on this subject, and they practically speak with one voice. Last year the whole doctrine was commented on in *Railroad Co.* v. *Cooper*, 22 Ind. App., 462, s.c. 53 N. E., 1092, *et seq.*, with full approval. See, also, *Blair* v. *Adams* (C. C.), 59 Fed., 243; 5 Am. & Eng. Enc. L. (new ed.), 1095; *Williams* v. *Kimball* (Fla.), 16 So., 783, and, also, the authorities cited in the briefs of counsel on both sides in the case at bar and in the briefs and opinion in *Railroad Co.* v. *Johnson*, *supra*.

If anything can be said to be settled on reason and authority, it is that statutory rights of action given kindred for injuries done another do not embrace illegitimate kindred, without express mention. Legislation must be presumed to be enacted in the light of the common law, and not to give or enlarge rights denied at common law to a class separated by it from the common mass, without express mention.

Counsel cite *Marshall* v. *Railroad Co.*, 120 Mo., 275, s.c. 25 S. W., 179, where the right of the mother of a bastard to sue for his death was sustained. It will be seen on page 282, 120 Mo. (page 181, 25 S. W.), that the opinion, in fact, rests on two statutes of the State of Missouri, the first declaring the mother to be the natural guardian of her illegitimate child. We have no such statute in Mississippi. The second declares that the mother may inherit from her bastard child. We have no such statute in Mississippi. Here the mother of a bastard cannot inherit from him.

Now, if we turn to the statute under which appellee sued (laws 1898, p. 83), we see that it refers to the "widow, husband, father, mother, sister, brother" of deceased, and we hold that it refers only to the legal widow, husband, father, mother, sister, brother, because illegitimates are not expressly included. People unmarried can leave no widow or husband, and illegitimates can leave no father, mother, sister or brother, because they could have none at common law and no statute enables them to have either. The collocation shows that legitimates only could have been referred to. Certainly the putative father was not meant, and the adulterer or adulteress could not be meant under the terms, "husband or widow," and we can imagine no process of reasoning by which the courts can interpolate the words, "whether legitimate or illegitimate," before the words, "father, mother, sister or brother." Courts can only pronounce what the law is, not what they may think it ought to be.

The plaintiff below had no right to sue. If the right exists in any one, it cannot possibly exist in any one but the executor or administrator of the deceased.

*Reversed and remanded.*