## Wheeler *v.* Southern Railway Company.

[71 South. 812.]

1. Death. *Right of action. What law governs. Parties plaintiff. Mother of illegitimate child. Next of kin. Railroads.*

   In an action for wrongful death, the law of the state where the injury occurred must govern though the action is brought in this state by the administrator of deceased.

2. Action for Wrongful Death. *Parties plaintiff. Mother of bastard child. Next of kin.*

   A suit for wrongful death under the Tennessee Statute (Section 4025, Shannon's Code), may be brought for the benefit of the

"next of kin" and under section 4166, Shannon's Code, the mother. is the next of kin of her bastard child, and may therefore under section 4025, Shannon's Code, maintain an action, by the administrator for damages for death of her bastard child.

3. RAILROADS. *Actions for death.* *Question for jury.*

    In an action for wrongful death of plaintiff's intestate killed by defendant's train in Tennessee, and governed by Shannon's Code, Tenn., section 1574, subsec. 4, requiring railroads to keep an engineer or some one on the locomotive always on the lookout ahead, and when any person appears on the road to employ every possible means to prevent the accident, section 1575, making every railroad failing to observe such precautions responsible · for all damages to persons resulting from any accident, and section 1576, exonerating it from liability if it has observed such precautions, where there is a sharp conflict in the evidence, the question of liability for damages should be submitted to the jury.     .

APPEAL from the circuit court of Tishomingo county. HON. CLAUDE CLAYTON, Judge.

Suit by Dr. J. S. Wheeler, administrator, against the Southern Railway Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

·. *Cunningham & Cunningham* and *J. E. Berry,* for appellant.

Counsel's brief refers to two Tennessee statutes, and in doing so, calls attention to the very death knell of their own contentions as to the rights of a mother, through an administrator, to maintain a suit for the negligent killing of a bastard child.

Sections 4025-6-7-8-9 of Shannon's Code of Tennessee gives (we quote the language from the supreme court of Tennessee as quoted by appellant's brief, page 3) the right to maintain an action against one person for wrongfully causing the death of another is purely statutory—given for the benefit of the widow, the children or next of kin of the deceased. "The next of kin." Aye, that is the question. This phrase used in the statute, properly

defined refers to whom? A reference to words and Phrases, Volume 5, page 4799, shows that the courts have frequently defined the phrase to mean and include any person who inherits in any given jurisdiction.

A very able and lucid discussion of this question is found in the recent case of *L. T. Dickerson Coal Company* v. *Liddel,* 94 N. E. Rep. 411. This case takes up the authorities cited by counsel for appellée and shows clearly that they have nothing whatever to do with the case at bar. Sections 4166-7 of Shannon's Code of Tennessee considered in connection with the above authority absolutely demolishes the position taken by counsel for appellee on this question.

Two things are conceded by counsel for appellee. One is that the Tennessee statutes give the "next of kin" the right to maintain this action, and the other is that the mother of a bastard child is given the right by statute to inherit. The latter concession unquestionably makes her "the next of kin," and the former gives her the right to maintain the action.

An examination of the authorities cited by appellee will show how repeatedly "the next of kin" is recognized as having this right, and the authorities make it clear that she is within the contemplation of this phrase.

In defining who is meant by the legislature to be included in the term "the next of kin" the supreme court of Tennessee in defining its own statute in the case of *Freeman* v. *The Illinois Central Railroad Company,* 64 S. W. p. 2, says: "The parties who are entitled to take under the statutes of distribution are, in the contemplation of the other statutes "the next of kin."

*W. J. Lamb,* for appellee.

The declaration in this case says that the deceased was a bastard, and suit was brought for the benefit of his mother, Mattie Thomas, and his two bastard brothers, Hout and Harry Thomas.

Under the common law there could be no right of re-covery in this case. If the statutes of Tennessee give no right of recovery, then the case of the appellant must fail, and the decision of the lower court was correct. The common law must govern except where it is charged by statutory enactment. We know of nothing that expresses better the situation that the mother and brothers are in this case, than has been held by this court in the case of *Railroad* v. *Johnson,* 77 Miss. 732. *Railroad Company* v. *Williams,* 78 Miss. 216.

We now turn to the statute of Tennessee, and we find the same condition exists regarding the laws of the state of Tennessee, as do in our state. Sections 4025, 4026, 4027, 4028 and 4029 of Shannon's Code of Tennessee, are the statutes that provide for the right of action in case of injury or death. In none of these statutes is there anything said, taking the injury done a bastard out of the common-law rule. This being the law of the state of Tennessee, then the appellant has no right to recover un-der the statute above mentioned.

The supreme court of Tennessee says in the case of *Railroad Company* v. *Pitts, Administrator,* 91 Tenn. (7 Pickle) page 92, as follows: ''The right to maintain an action against one person for wrongfuly causing the death of another is purely statutory—given for the bene-fit of the widow, children, or next of kin of the deceased. The suit may be brought by the beneficiaries, in their own right, or by the personal representative for their use and benefit. Code, secs. 3130-3132; *Webb* v. *Railway Co.,* 4 Pickle 119; *Greenlee* v. *Railroad,* 5 Lea, 418; *Trafford* v. *Adams Express Co.,* 8 Lea, 100.''

No express mention is made in any of the foregoing Tennessee statutes, embracing illegitimate kindred, as among those given the right to recover for the death of an illegitimate. The right to maintain such an action is purely statutory and is given for the benefit of the widow, children, or next of kin. No such parties exist in the case

at bar, so the suit must fail.    *E. T., V. & G. Ry. Co.* v.
*Thos. B. Lilly Admr. etc.,* 6 Pickle, 563.

The statute of Tennessee expressly provides that suit
for a wrongful death can only be brought where there is
a widow, child or next of kin to receive the benefit. The
declaration in this case shows that the deceased had nei-
ther widow, child or next of kin, to receive the benefit for
as shown by the declaration, he was the bastard son of
Mattie Thomas, and the bastard brother of Harry and
Hout Thomas, neither being included in the Tennessee
statutes, which leaves the common-law rule absolutely in
force.

Wherever the question has arisen upon statutes similar
to our own, the courts have held with unanimity that the
declaration is fatally defective unless it avers that the
deceased left a widow, child, or next of kin, surviving
him. Such, at least, is the uniform holding of all the
cases we have been able to find. It is the prevailing doc-
trine in New York, Indiana, Illinois, Minnesota, Ver-
mont, South Carolina, Kansas, and Wisconsin, as will
appear from the following cases: *Safford* v. *Drew,* 3 Duer.
627; *Lucas* v. *N. Y. Central R. R. Co.,* 21 Barbour, 245; *I.
R. R. Co.* v. *Keely's Admr.,* 23 Ind. 133; *Stewart* v. *T. H.
& I. R. R. Co.,* 103 Ind. 44; S. C., 21 Am. and Eng. R. R.
Cas. 209; *C. & R. R. Co.* v. *Morris,* 26 Ill. 400; *Cohant* v.
*Griffin,* 48 Ill. 411; *Holton* v. *Daly,* 106 Ill. 131; *Schwartz*
v.*Judd,* 28 Minn. 371; *Westcott* v. *C. V. R. R. Co.,* 61 Vt.
438; *Geroux's Adm'r* v. *Graves* (Vt.), 10 S. E. R. 932;
*Mo. Pac. R. Y. Co.* v. *Barber,* 44 Am. and Eng. R. R. Cas.
523; *Woodward* v. *Railway Co.,* 23 Wis. 400.''

The supreme court of Tennessee in the case of *Railway*
v. *Lilly,* 90 Tenn. (6 Pickle) 565, in construing the stat-
ute in this case says as follows: ''The statute virtually
creates a liability in favor of the widow or next of kin,
which did not exist, at common law, hence the courts will
not extend or enlarge that liability by liberality of con-
struction, but will confine it to cases clearly within the
provisions of the act. No right of action will be inferred;

.no remedy will be given in favor of any persons  except those distinctly contemplated as beneficiaries.''

''The very comprehensive language: 'The right of action' shall not abate or be extinguished, 'standing by itself, would undoubtedly embrace every case of wrongful killing.' That which follows, however, qualified the preceeding words, and restricts the provisions to cases in which there is a widow or next of kin to be benefited.''

All of the decisions of the courts of Tennessee hold that before the right to recover exists, it must be shown that the deceased left surviving him a widow, child or next of kin. The deceased left no widow, child, nor could he have any next of kin, because of being a bastard.  It necessarily follows that any right of action which cannot pass for the lack of a widow or next of kin to take the benefit of recovery, is not within the provisions of the statutes, and the action must abate as at common law.

HOLDEN, J., delivered the opinion of the court.

This case is appealed from the circuit court of Tishomingo county, where the appellant, Dr.  J. S.  Wheeler, administrator of the estate of Fred Thomas, deceased, filed his declaration against the appellee, Southern Railway Company, claiming damages for the death of Freddie Thomas, caused by one of appellee's trains, about two miles east of Rossville, Tenn.  The deceased,  Freddie Thomas, was a bastard, about sixteen years of age, and the suit was filed by the administrator for the benefit of the mother of this bastard son.  The testimony in the case shows that one night in October,  1912,  Freddie Thomas and Audie Gaines, both boys about sixteen years of age, were traveling afoot east on the right of way of the appellee, about two miles east of Rossville, Tenn., on their way to Corinth, Miss.  While walking along the track in the nighttime, they became tired  and  seated themselves for a temporary rest upon the appellee's main track at a place where the roadbed was level and the track

clear and straight for a distance of two or three miles. While seated upon the track, they both fell asleep, and while they were sitting there asleep, the appellee's east-bound fast passenger train approached, running at a speed of forty or fifty miles an hour. When the train got within about two hundred feet of the boys, one of them, Audie Gaines, awoke, and, seeing his danger, sprang from the track just in time to escape being struck by the engine, while the deceased, Freddie Thomas, awoke and raised his head to look, and was struck by the train and killed.

As the law of Tennessee, where the death occurred, must govern this action, we here set out the statutes of Tennessee upon which the cause of action is based: Section 1574, subsec. 4, Shannon's Code of Tennessee of 1896:

"Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

Section 1575:

"Failure to Observe Precautions.—Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur."

Section 1576:

"Observance of.—No railroad company that observes, or causes to be observed, these precautions shall be responsible for any damage done to persons or property on its road. The proof that it has observed said precautions shall be upon the company."

It will be observed that the Tennessee statutes require that every railroad company running locomotives keep

an engineer, fireman, or some other competent person on the lookout ahead, and, when any person, animal, or other obstruction appears upon the road, to sound the alarm whistle, put down the brakes, and do everything possible to prevent an injury; and when any person appears upon the road as an obstruction and is injured or killed by a train, the railroad shall be liable for damages, unless it exonerates itself by proof that it observed all of the precautions required by the statutes, viz., a competent lookout ahead, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.

The appellant made out his case by the proof required under the statute, and rested. The appellee railroad company then undertook to meet the burden imposed by the statutes, and introduced the engineer, Smith, who was in charge of the engine of the train that struck and killed the deceased, Freddie Thomas. Engineer Smith testified that he was at his place on the engine, was on the lookout ahead, and as soon as the obstruction appeared on the track, sounded the alarm whistle, put down the brakes, and did everything possible to stop the train and prevent the injury. The engineer further testified that the two boys on the track were not seen by him until his engine had approached within one hundred and fifty to two hundred feet of them. He also testified that the headlight on his engine was a high-power electric headlight, and was adjusted for "seeing far away," and that his electric headlight was "focused to shine something like three hundred to four hundred yards beyond the point of the angle." He also admitted that at the time of the killing, and while near the mangled body of the deceased, he said he did not see these boys on the track until he was "right on them."

In rebuttal, the appellant introduced as a witness, Audie Gaines, the other boy who escaped death at the time the deceased was killed, and this witness testified that he was present, and was close to where the deceased was.

when struck, and was in close proximity to the train as it approached and passed, and that he heard no alarm whistle sounded. He also contradicted the testimony of the engineer, Smith, in that, he said that the train did not begin to stop until the engine had passed him. The appellant also introduced a witness by the name of W. T. Barnett, who testified that he was a passenger on the train at the time it struck the deceased, Freddie Thomas, and that he heard no whistle alarm sounded, and that he was in a position to hear it, and would have heard it if any had been sounded.

Other testimony in the record shows that the length of the train in question was eight hundred and forty-five feet; and the engineer, Smith, testified that the brakes were put on one hundred and fifty to two hundred feet west of the scene of the injury, and that the train came to a stop within eight hundred feet from the place where the brakes were applied, and that the train ought to be stopped within one thousand feet. The witness Barnett testified that the rear end of the train, when it stopped, must have been one-half mile east of the scene of the injury, thus contradicting Engineer Smith materially as to the point at which the brakes were applied.

Other testimony in the record discloses that with the same kind of straight, level track, and with the same kind of train, engine, and electric headlight, operated under similar conditions, a boy on the track could be observed from the engine for a distance of three hundred and fifty steps. Other evidence in this connection shows that under the circumstances and conditions just named above, a boy lying on the track between the rails could be seen with this headlight at a distance of from four hundred to one thousand yards.

With all the above testimony before the court, the appellee requested, and was granted, a peremptory instruction, dircting the jury to find for the defendant; and the appellant assigns as error this action of the lower court.

The appellee raised the point in the lower court, and urges it here, that, as the deceased Freddie Thomas was a bastard, a recovery by the administrator for the benefit of the mother will not lie, for the reason that the mother of a bastard child is not, under the law, the "next of kin," and that consequently the action cannot be maintained. A suit, under the Tennessee statute (section 4025, Shannon's Code) may be brought for the benefit of the "next of kin;" and under another statute of Tennessee, the mother of a bastard child may inherit his estate. Section 4166, Shannon's Code:

"Estate of Illegitimate, How Inherited.—When an illegitimate child dies intestate without child or children, husband or wife, his real and personal estate shall go to his mother; and if there be no mother living, then equally to his brothers and sisters by his mother, or descendants of such brothers and sisters"

—and therefore it follows that the mother is the "next of kin," and may, under the statute (section 4025, Shannon's Code), maintain an action, by the administrator, for damages for the death of her bastard child. The harsh and unjust rule that has been applied to illegitimates by the common law is undoubtedly modified by the statute referred to above. This common-law rule was announced in an age when the thought and conditions then obtaining were different, and probably less humane, than at the present day. A bastard comes into the world on account of an immoral act for which he is in no way responsible. It is not because of his own conduct that he is discriminated against by the law, but the discrimination is based upon acts committed by other persons, without his consent or knowledge, and long before he was born. The legislature manifested a spirit of justice and fair play by modifying the common-law rule, the harshness of which had so long been obvious to all. In the case of L. T. Dickason Coal Co. v. Liddil, 49 Ind. App. 40, 94 N. E. 411, an Indiana case, the subject is so ably

discussed that we here quote at length from the opinion by Justice Lairy:

"It is undoubtedly true that, by the common law, a bastard was looked upon as the child of nobody. 'He cannot be heir to any one, neither can he have heirs, but of his own body; for being *nullius filius,* he is therefore of kin to nobody, and he has no ancestor from whom any inheritable blood can be derived.' 1 Bl. Com. 459. Kent says: 'The rule that a bastard is *nullius filius* applies only to the case of inheritances. It has been held to be unlawful for him to marry within the Levitical degrees; and a bastard has been held to be within the marriage act of St. 26 Geo. II, which required the consent of the father, guardian, or mother to the validity of the marriage of a minor. He also takes and follows the settlement of his mother. With the exception of the right of inheritance and succession, bastards, by the English law, as well as by the law of France, Spain, and Italy, are put upon an equal footing with their fellow subjects; and in this country we have made very considerable advances toward giving them also the capacity to inherit by admitting them to possess inheritable blood.' 2 Kent, Com. (13th Ed.) 214. It will be seen that the chief incapacity of a bastard consisted in his want of inheritable blood. This want has been supplied in this state by statute, and the harsh rule of the common law, which forbade an illegitimate child inheriting from its mother or she from it, has been thereby abrogated. . . .

"This action is brought by the administrator of the deceased illegitimate child under the provisions of section 285, Burns' Rev. Stat. 1908, and the question is whether the mother of such child is its next of kin, or whether such child has no next of kin within the meaning of the provisions of that section. As we have seen, the statutes of this state give to such a child the right to inherit from its mother, and to the mother and her descendants and collateral kindred a right to inherit from such child. In this state there is no distinction between heirs

at law and next of kin. 'At common law the chief practical difference between next of kin and heirs at law is that the former take the personal property by distribution, and the latter the real estate by descent. But under our statutes of descent, no such distinction is recognized, and the heirs at law are also the next of kin.' Henry's Probate Law, par. 819. In the case of *Rogers* v. *Weller,* the federal court construed the term, 'next of kin,' as applied to an illegitimate child, in connection with a statute of Illinois similar to our own. The court said: 'The effect of this statute is to give to the illegitimate children of the mother inheritable blood. So far as our state is concerned, they are vested by the operation of this statute with the qualities of inheritance. They can receive from the mother by descent and take real estate and other property to the same extent as legitimate children, and, taking in connection with the subsequent statute of 1853, which has first been discussed, it seems to me that the better interpretation is that the term "next of kin," used in the last clause of the act of 1853, includes illegitimate children, if such exist, of the mother, where the mother is heir.' *Rogers* v. *Weller,* 20 Fed. Cas. 1130, 1131. The statute of Illinois confers upon illegitimate children practically the same rights in reference to inheriting and transmitting property by inheritance as are given by our statute. The supreme court of that state held that these statutes so changed the *status* of a bastard at common law as to permit his administrator to maintain an action for his death for the benefit of his mother as his next of kin. The case is exactly in point, and holds that, under statutes such an ours, the mother of an illegitimate child is his next of kin and his heir, and that an action may be maintained by the administrator of such deceased illegitimate child for her benefit as its next of kin. *Security Title, etc.,* v. *West Chicago, etc., R. Co.,* 91 Ill. App. 332. In the case of *Marshall* v. *Wabash R. Co.,* 120 Mo. 275, 25 S. W. 179, the supreme court of Missouri held that the mother of an illegitimate child

could maintain an action for the wrongful death of such child under a statute conferring upon a parent the right to maintain an action for the wrongful death of an unmarried minor child. The decision was based upon the statute of that state which provides: 'Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, and such mother may inherit from her bastard child or children in like manner as if they had been lawfully begotten of her.' Rev. St. 1889, section 4773. The court says: 'This section does not, it is true, legitimate a bastard, but it concedes to him inheritable blood on the mother's side. Instead of being the son of nobody, as at common law, he has a mother who is recognized as such by our laws. The duty of supporting him rests upon her, and she is entitled to his services during minority. As the chief and principal incapacity of a bastard has been removed so far as he and his mother are concerned, there seems to be no good reason why a statute that speaks of parents and children should not apply to a mother and her illegitimate child, unless there is something in the statute or subject about which it treats to show that it was not intended to apply to persons standing in that relation.'

"Our attention has been called to the cases of *Alabama, etc., Co.* v. *Williams,* 78 Miss. 209, 28 So. 853, 51 L. R. A. 836, 84 Am. St. Rep. 624, and *Illinois, etc., R. Co.* v. *Johnson,* 77 Miss. 727, 28 So. 753, 51 L. R. A. 837, both decided by the supreme court of Mississippi (in October, 1900). The first of these cases was an action by Susan Williams to recover from the appellant for the wrongful death of her illegitimate child. A recovery was denied, and, in the course of the opinion, the court says: 'Counsel cite *Marshall* v. *Wabash R. Co.,* 120 Mo. 275, 25 S. W. 179, where the right of the mother of a bastard to sue for his death was sustained. It will be seen on page 282 of 120 Mo., page 181 of 25 S. W., that the opinion in fact rests on two statutes of the state of Missouri; the first declaring the mother to be the natural guardian of her illegitimate

child. We have no such statute in Mississippi. The sec-
ond declares that the mother may inherit from her bas-
tard child. We have no such statute in Mississippi. Here
the mother of a bastard cannot inherit from him.' . . .
The phrase 'next of kin' includes such persons as are
entitled to inherit the personal property of the deceased
person. *Warren* v. *Englehart,* 13 Neb. 283, 13 N. W. 401.
Under the statutes of our state, the mother of an illegit-
imate child and her descendants and collateral kindred
are entitled to inherit the personal property of such de-
ceased child, and are therefore its next of kin. We rec-
ognize the rule that a statute in derogation of the common
law must be strictly construed, and we regard section
285, Burns' Rev. Stat. 1908, as such a statute, but we do
not think that a strict construction of this section will
prevent the mother of an illegitimate child from being
considered its next of kin within the meaning of this act.''

We will now discuss the question as to whether or not
the lower court erred in granting a peremptory instruc-
tion for the appellee railroad company on the facts. Did
the railroad company meet the burden imposed upon it
by the statutes and exculpate itself by proof? Did the
engineer sound the alarm whistle when the deceased ap-
peared upon the track? The engineer says that he did
sound the alarm whistle; but the witness, Barnett, who
was a passenger on the train at the time of the injury, dis-
putes the engineer as to this; and the witness Audie
Gaines, who was the closest living person, at the place of
the injury, testifies that he heard no alarm whistle sound-
ed, which also disputes the testimony of the engineer as to
this requirement of the statute. There is other evidence
in the record which presents a conflict as to whether the
''brakes were put down'' and every possible means em-
ployed to stop the train and prevent the injury. It will
be observed further in this testimony, that here was a
straight, level, clear track for a distance of two miles, up-
on which a boy lying down could be seen by the engineer
using an electric headlight for a distance of some four

hundred to one thousand yards. The engineer testified that he did not see the boys until he was "right on them," or about one hundred and fifty or two hundred feet from them. Now, the statute requires that the railroad company shall keep the engineer always upon the lookout ahead. If the engineer was at the time "upon the lookout ahead," he should have seen the deceased boy upon the track in plenty of time to have stopped his train and avoided the killing. These facts and circumstances present a material conflict in the testimony. If the engineer did not stop the train within eight hundred feet after he passed the point of the injury, but ran on for half a mile further, as testified to by the witness Barnett, then this fact would be a circumstance, raising a conflict in the proof, as to whether or not the engineer "employed every possible means to stop the train and prevent an accident."

We do not hesitate to say, after a careful review of all the testimony in this case, that there is a sharp conflict in the testimony of the appellant and appellee, and the lower court should have let this case go to the jury, so that they might pass upon the facts, and determine whether or not the appellee railroad company is liable for damages, under the law and facts, as they appear in this record.

*Reversed and remanded.*