# L. T. Dickason Coal Company *v.* Liddil, Administrator.

[No. 7,182. Filed March 17, 1911. Rehearing denied June 6, 1911. Transfer denied December 7, 1911.]

1. Bastards.—*Descent and Distribution.*—At the common law a bastard could not inherit nor could he have heirs, except his own issue. p. 44.
2. Bastards.—*Inheritance from Mother.*—*Statutes.*—Under §2998 Burns 1908, §2474 R. S. 1881, providing that "illegitimate children shall inherit from the mother as if they were legitimate and

L. T. Dickason Coal Co. *v.* Liddil—49 Ind. App. 40.

through the mother, if dead, any property or estate which she would, if living, have taken by gift, devise, or descent from any other person," an illegitimate child may inherit from its maternal ancestors. p. 44.

3. BASTARDS.—*Heirs of.*—*Statutes.*—Under §3002 Burns 1908, §2477 R. S. 1881, providing that "the mother of an illegitimate child dying intestate, without issue or other descendants, shall inherit his estate; and if such mother be dead, her descendants or collateral kindred shall take the inheritance," gives the maternal ancestors of a bastard child an inheritable interest in its estate. p. 45.

4. BASTARDS.—*Action for Death of.*—*Next of Kin.*—*Negligence.*— An action lies on behalf of the administrator of an illegitimate child for the benefit of such child's mother and its half-brothers and -sisters, where such child's death was caused by defendant's wrongful act, such mother and half-brothers and -sisters constituting such child's next of kin. p. 45.

5. DESCENT AND DISTRIBUTION.—*Heirs at Law.*—*Next of Kin.*—At the common law the decedent's next of kin took his personal property by distribution, and the heirs at law took his real estate by descent; but in this State the next of kin and the heirs at law are the same. p. 46.

6. MASTER AND SERVANT.—*Coal Mines.*—*Mule Drivers.*—*Defective Hitching Apparatus.*—*Complaint.*—A complaint alleging that the plaintiff's decedent was employed by defendant coal mining company to haul coal out of defendant's mine, that the hooks connecting the draw-bar of the coal car and the chain to which the mule was attached were defective, to defendant's knowledge, that the plaintiff's decedent was ignorant of the dangers thereof, that as the car started down an incline the mule became unhitched and ran ahead of the car, throwing plaintiff's decedent on the track and causing his death, and that he left certain persons as his next of kin, states a cause of action on behalf of decedent's administrator. pp. 49, 50.

7. MASTER AND SERVANT. — *Defective Apparatus.* — *Notice.* — *Complaint.*—A complaint for injuries caused by defective appliances, containing a general allegaton of want of notice, is sufficient, unless it contains specific allegations showing that the plaintiff's decedent must have known thereof, or that he had an equal opportunity with his master to know thereof. p. 50.

8. MASTER AND. SERVANT.—*Coal Mines.*—*Mule Drivers.*—*Defective Appliances.*—*Evidences.*—Evidence that defendant coal mining company's mule driver was inexperienced at his work, that the hooks on the draw-bar of the coal car and the chain by which the mule was hitched to the car were defective, that the driver was seen before the accident with one foot on the front bumper of the

car and the other on the tail-chain, that he was found dead a few minutes later under the wheels of the car, the mule unhitched and standing some distance away, supports a verdict in favor of decedent's administrator that decedent's death was caused by such defective hooks.  p. 51.

9. TRIAL.—*Instructions.—Duplication.*—It is not erroneous to refuse to duplicate instructions.  p. 52.

10. MASTER AND SERVANT.—*Assumption of Risk.—Instructions.*— An instruction in a master and servant action, ignoring the assumption of risk and contributory negligence is not erroneous, where other instructions explicitly covered such questions. p. 52.

11. MASTER AND SERVANT. — *Inexperienced Servant. — Failure to Warn.—Instructions.—Outside Issues.*—An instruction that the complaint alleged that defendant was negligent in failing to warn plaintiff's decedent of the dangers, that such decedent was inexperienced, and further stating that such allegations were not material and would not warrant a recovery, was not prejudicial, though the complaint contained no such averment.  p. 53.

12. MASTER AND SERVANT.—*Inexperienced Servant.—Warning.—Instructions.*—An instruction that if the evidence shows that the servant was young and inexperienced, of which defendant's agent had knowledge, the jury could consider that fact in determining his knowledge of the alleged defects, or whether by the use of ordinary care he could have known of the alleged defects, and therefore whether he assumed the risk, correctly states the law. p. 53.

13. MASTER AND SERVANT.—*Damages.—Evidence.—Instructions.*— An instruction that does not expressly limit the jury to the evidence in assessing damages, is not prejudicial, where other instructions stated that the plaintiff was bound to prove all the facts upon which he relied for a recovery.  p. 53.

14. TRIAL.—*Instructions.—How Considered.*—The instructions in a case must be considered as a whole and not by piecemeal.  p. 54.

From Greene Circuit Court; *Charles E. Henderson,* Judge.

Action by Charles Liddil, as administrator of the estate of Raymond Liddil, deceased, against the L. T. Dickason Coal Company.  From a judgment on a verdict for the plaintiff for \$1,800, defendant appeals.  *Affirmed.*

*Elmer E. Stevenson, Lee F. Bays, Fred F. Bays* and *Orion B. Harris,* for appellant.

*Oscar E. Bland* and *W. V. Moffitt,* for appellee.

LAIRY, J.—This is an action for damages for the death of Raymond Liddil, based upon the alleged negligence of appellant. The action is brought by the administrator of Raymond Liddil for the benefit of the next of kin of said decedent, consisting of his mother, Sarah Sourwine, his half-brothers, Earl and Willard Sourwine, and his half-sister, Grace Sourwine. A demurrer to the complaint was filed and overruled, and appellant then filed an answer in general denial, and also an affirmative paragraph of answer, setting up the facts that decedent was the illegitimate child of Sarah Liddil, born out of wedlock, that his father was never married to Sarah Liddil, and that she afterward married a man named Sourwine, who died in October, 1905. A demurrer to this paragraph of answer was sustained. The case was tried upon the issues formed by the complaint and the answer of general denial, and a judgment was rendered in favor of appellee, from which this appeal is taken.

The action of the trial court in sustaining the demurrer to the second paragraph of answer is assigned as error, and this presents the question most strongly urged upon this court as a ground of reversal.

The demurrer to the second paragraph of answer admits that decedent was the illegitimate son of Sarah Sourwine. It is contended by appellant that, on account of such illegitimacy, he could have no next of kin for whose benefit the action could be maintained; that at common law a bastard had no father, and was considered the son of nobody, being sometimes called *filius nullius* and sometimes *filius populi;* that a statute giving a right of action for the death of a human being is in derogation of the common law, and must be strictly construed; that the persons named in the statute as the persons for whose benefit the action can be maintained excludes all others; and that a strict construction of our statute excludes the mother of an illegitimate child, and its half-brothers and -sisters from the class of beneficiaries known as next of kin, for whose benefit an action of this kind

is authorized by statute. In support of this contention, appellate cites a number of cases, some of which are from the highest court of this State. *McDonald* v. *Pittsburgh, etc., R. Co.* (1896), 144 Ind. 459, 32 L. R. A. 309, 55 Am. St. 185; *Thornburg* v. *American Strawboard Co.* (1895), 141 Ind. 443, 50 Am. St. 334; *Citizens St. R. Co.* v. *Cooper* (1899), 22 Ind. App. 459, 72 Am. St. 319; *Illinois, etc., R. Co.* v. *Johnson* (1900), 77 Miss. 727, 28 South. 753, 51 L. R. A. 837; *Alabama, etc., R. Co.* v. *Williams* (1900), 78 Miss. 209, 28 South. 853, 51 L. R. A. 836, 84 Am. St. 624; *Fabel* v. *Cleveland, etc., R. Co.* (1903), 30 Ind. App. 268.

It is undoubtedly true that by the common law a bastard was looked upon as the child of nobody. "He cannot be

1. heir to any one, neither can he have heirs, but of his own body; for, being *nullius filius,* he is therefore of kin to nobody, and as he has no ancestor from whom any inheritable blood can be derived." 1 Blackstone's Comm. *459. It is said in Kent's Comm. (13th ed.) *214:

2. "The rule that a bastard is *nullius filius* applies only to the case of inheritances. It has been held to be unlawful for him to marry within the Levitical degrees; and a bastard has been considered to be within the marriage act of 26 Geo. II., which required the consent of the father, guardian, or mother, to the validity of the marriage of a minor. He also takes and follows the settlement of his mother. With the exception of the right of inheritance and succession, bastards, by the English law, as well as by the law of France, Spain, and Italy, are put upon an equal footing with their fellow-subjects; and in this country we have made very considerable advances towards giving them also the capacity to inherit, by admitting them to possess inheritable blood. It will be seen that the chief incapacity of a bastard consisted in his want of inheritable blood. This want has been supplied in this State by statute, and the harsh rule of the common law, that forbade an illegitimate child from inheriting from its mother or she from

it, has been thereby abrogated. The statute, conferring upon illegitimate children the right to inherit from the mother, is as follows: "Illegitimate children shall inherit from the mother as if they were legitimate, and through the mother, if dead, any property or estate which she would, if living, have taken by gift, devise, or descent from any other person. §2998 Burns 1908, §2474 R. S. 1881. The statute conferring upon the mother of an illegitimate child and her descendants the right to inherit from such illegitimate child is as follows: "The mother of an illegitimate child dying intestate, without issue or other descendants, shall inherit his estate; and if such mother be dead, her descendants or collateral kindred shall take the inheritance in the order hereinbefore prescribed." §3002 Burns 1908, §2477 R. S. 1881.

The question here involved has never been before either the Supreme Court or the Appellate Court in a case where it was directly presented and decided. Three cases are cited from this State, in which the question under consideration was discussed as bearing upon the questions therein decided, but these cases are not decisive. The effect of the statutes before quoted was not discussed in any one of the cases, and a consideration of these statutes was not necessary to the proper decision of the question before us. In the case of *McDonald* v. *Pittsburgh, etc., R. Co., supra,* the putative father of an illegitimate child, who had acknowledged it and reared it as his own, sought to recover damages resulting from its alleged wrongful death. The action was brought under the provisions of §267 Burns 1908, §266 R. S. 1881, conferring upon a father the right to maintain an action for the death of his child. The question as to whether the putative father was the next of kin to the child was not involved. Our statutes do not confer upon the putative father of a bastard the right to inherit from him, even though he may have acknowledged such child as his own, and so the reasons for holding that the mother of such

a child is its next of kin do not apply with equal force in favor of the putative father.

In the case of *Thornburg* v. *American Strawboard Co.*, *supra*, the appellant brought an action for the death of the illegitimate son of his wife. The court rightly denied a recovery in his favor, saying: "It is not necessary to decide who, if any one, was the proper party to bring this action, whether the mother or an administrator; that question is not before us. What we adjudge is that appellant, whether properly called a step-father or not, cannot maintain this action." This case is easily distinguished from the case at bar, and what we have said in reference to the preceding case applies with equal force to this one.

In the case of *Citizens St. R. Co.* v. *Cooper, supra,* a woman brought an action under the provisions of §267, *supra,* to recover damages for the death of a child reared by her. It did not appear that she was its mother or that she had legally adopted the child. As the statute giving to a parent the right to recover damages for the death of a child is in derogation of the common law, and must be strictly construed, it will be seen at once that a person not standing in the relation of a parent could not recover by virtue of its provisions. Under the facts as presented, no other conclusion could be reached, and a recovery was properly denied.

This action is brought by the administrator of the deceased illegitimate child, under the provisions of §285 Burns 1908, Acts 1899 p. 405, and the question is whether the mother of such child is its next of kin, or whether such child has no next of kin within the meaning of the provisions of that section. As we have seen, the statutes of this State give to such a child the right to inherit from its mother, and to the mother and her descendants and collateral kindred a right to inherit from such child. In this State there is no distinction between heirs at law and next of kin. "At common law, the chief practical difference between next of kin and heirs at law is, that the former take

the personal property by distribution, and the latter the real estate by descent. But under our statutes of descent, no such distinction is recognized, and the heirs at law are also the next of kin." Henry, Probate Law §819. In the case of *Rogers* v. *Weller* (1870), Fed. Cas. No. 12,022, the federal court construed the term "next of kin," as applied to an illegitimate child, in connection with a statute of Illinois similar to our own. The court said: "The effect of this statute is to give to the illegitimate children of the mother inheritable blood. So far as our State is concerned, they are vested by the operation of this statute with the qualities of inheritance; they can receive from the mother by descent and take real estate and other property to the same extent as legitimate children, and taken in connection with the subsequent statute of 1853, which has first been discussed, it seems to me that the better interpretation is that the term 'next of kin,' used in the last clause of the act of 1853, includes the illegitimate children, if such exist, of the mother, where the mother is heir."

The statute of Illinois confers upon illegitimate children practically the same rights in reference to inheriting and transmitting property by inheritance as are given by our statute. The supreme court of that state held that these statutes changed the status of a bastard at common law so as to permit its administrator to maintain an action for its death for the benefit of its mother, as next of kin. The case is exactly in point, and holds that under statutes such as ours the mother of an illegitimate child is its next of kin and its heir, and that an action may be maintained by the administrator of such deceased illegitimate child for her benefit, as its next of kin. *Security Title, etc., Co.* v. *West Chicago St. R. Co.* (1900), 91 Ill. App. 332.

In the case of *Marshall* v. *Wabash R. Co.* (1894), 120 Mo. 275, 25 S. W. 179, the supreme court of Missouri held that under a statute conferring upon a parent the right to maintain an action for the wrongful death of an unmarried

minor child, the mother of an illegitimate child could maintain an action for the wrongful death of such child. The decision was based on the statute that provides as follows: "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, and such mother may inherit from her bastard child or children in like manner as if they had been lawfully begotten of her." The court said: "This section does not, it is true, legitimate a bastard, but it concedes to him inheritable blood on the mother's side. Instead of being the son of nobody, as at common law, he has a mother who is recognized as such by our laws. The duty of supporting him rests upon her, and she is entitled to his services during minority. As the chief and principal incapacity of a bastard has been removed so far as he and his mother are concerned, there seems to be no good reason why a statute which speaks of parents and children should not apply to a mother and her illegitimate child, unless there is something in the statute or subject about which it treats to show that it was not intended to apply to persons standing in that relation."

Our attention has been called to the cases of *Alabama, etc., R. Co.* v. *Williams, supra,* and *Illinois, etc., R. Co.* v. *Johnson, supra.* The first of these cases was an action by Susan Williams to recover for the wrongful death of her illegitimate child. A recovery was denied, and, in the course of the opinion the court said: "Counsel cite *Marshall* v. *Wabash R. Co.* [1894], 120 Mo. 275, 25 S. W. 179, where the right of the mother of a bastard to sue for his death was sustained. It will be seen on page 282 that the opinion, in fact, rests on two statutes of the State of Missouri, the first declaring the mother to be the natural guardian of her illegitimate child. We have no such statute in Mississippi. The second declares that the mother may inherit from her bastard child. We have no such statute in Mississippi. Here the mother of a bastard cannot inherit from him." In the second case, the appellee brought an action for the

wrongful death of her illegitimate half-sister, and a recovery was denied. The question as to whether the sister was the next of kin to her illegitimate half-sister did not arise in this case. The action was brought under a statute giving a right to a sister or brother to sue for the wrongful death of a sister or brother, and it was held that the words "sister" and "brother," as used in the act, would be construed to mean legitimate sister or brother. Other cases are cited from England and Canada, where the common law still prevails, but in view of the statutes of our State, heretofore quoted, we do not feel bound to follow these dicisions.

The phrase "next of kin" includes such persons as are entitled to inherit the personal property of the deceased person, *Warren* v. *Englehart* (1882), 13 Neb. 283. Under the statutes of our State the mother of an illegitimate child and her descendants and collateral kindred are entitled to inherit the personal property of such deceased child, and are therefore its next of kin. We recognize the rule that a statute in derogation of the common law must be strictly construed, and we regard §285, *supra,* as such a statute, but we do not think that a strict construction of this section will prevent the mother of an illegitimate child from being considered its next of kin within the meaning of this act.

The action of the trial court in overruling appellant's demurrer to the amended complaint is assigned as error. It appears from the averments of the complaint that de-

6. cedent at the time he was killed was engaged in driving a mule hitched to a car loaded with coal in a mine operated by appellant; that the mule was hitched to the car by means of a chain attached to the draw-bar of the car by means of a hook; that the hook on the draw-bar was not bent back sufficiently, but was bent so as to form a right angle to said draw-bar; that the hook on the chain was not sufficiently bent so as to hold the hook on the draw-bar; that decedent had no knowledge of the defective condition

of the chain, hook and fastening, and that appellant had knowledge of the dangerous and defective condition thereof; that decedent was standing between the front end of the car and the mule, with one foot on the tail-chain and one foot on the bumper of the car; that this position was necessary and proper in driving the car, and that while he was so engaged, and while going down a slight incline, the mule became suddenly unhitched from said car, by reason of such defects, and the sudden separation of the mule from the car threw decedent in front of said car, and he was run over by said car and killed.

It is urged by appellant that the complaint affirmatively shows that the defects complained of were so open and obvious that decedent must have known of them, and that the general averment of want of knowledge on his part is overcome by the special averments of the complaint showing knowledge, and that the complaint. is therefore insufficient to withstand a demurrer, inasmuch as it shows that the risk was assumed. The general averment of want of knowledge of the defects on the part of the person injured is sufficient, unless the averment is overcome by specific averments of facts that clearly show that the employe must have known of such defects, or that he had the same opportunity for knowledge as his employer. *Louisville, etc., R. Co.* v. *Kemper* (1897), 147 Ind. 561, 565; *Baltimore, etc., R. Co.* v. *Hunsucker* (1904), 33 Ind. App. 27; *M. Rumley Co.* v. *Myer* (1907), 40 Ind. App. 460.

It appears however from the averments of this complaint that plaintiff's decedent was under sixteen years of age, and had been engaged in said work for only three days prior to his death. It further appears that he had never worked for any one else in that capacity, and that he was inexperienced as a driver and unacquainted with the kind of appliances necessary and suitable for this kind of work. When these facts are considered in connection with the other averments of the complaint, we do not think that it

clearly appears that decedent knew and appreciated the danger so as to overcome the direct averment of the want of such knowledge. "The mere fact that a servant may know or could have known of a defect by the exercise of ordinary care does not necessarily charge him with an assumption of the risks growing out of such defect, because the risks and hazards on account thereof may not be so open and apparent as to be appreciated by him, on account of his ignorance or want of experience." *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297. See, also, *Avery* v. *Nordyke & Marmón Co.* (1905), 34 Ind. App. 541.

In the case last cited this court said: "Where he is an infant, or otherwise lacking in discretion or judgment, there can never be any doubt but that he must be shown to have appreciated the danger before he can be charged with the assumption of the risk arising therefrom; and this, too, although the facts brought to his knowledge are sufficient to have warned one of ordinary capacity." We think that the complaint is sufficient to withstand a demurrer.

It is next insisted that the trial court should have granted a new trial, on the ground that the verdict is not sustained by sufficient evidence, and in this connection it is

8. claimed on behalf of appellant that there is no evidence showing that the death of Raymond Liddil was caused by the negligence of appellant. There is evidence tending to prove that the hook on the draw-bar of the car and the hook on the chain were both defective, as alleged in the complaint. It was also shown that four or five minutes before the accident, Raymond Liddil was seen standing with one foot on the front bumper of the car and the other foot on the tail-chain, driving the mule. When he was found a few minutes later, the tail-chain was unhooked from the draw-bar, and the mule had moved away some distance, and the body of the decedent was found under the wheels of the car. The character of the defects shown to exist in the hooks was such as to justify the jury in inferring that the

tail-chain became disconnected from the draw-bar of the car by reason of such defects. If this happened while Raymond Liddil was standing in the position in which he was last seen, the jury might infer that he was thrown to the track in front of the car, and that the momentum of the car caused it to run upon him and cause his death. The jury evidently drew this inference, and under the facts proved, we cannot say that it was not justified in doing so. The jury has a right to consider any fact as proved that can be rightly and reasonably inferred from the facts proved in the case. 1 Elliott, Evidence §26; *Sioux City, etc., R. Co.* v. *Stout* (1873), 17 Wall. 657, 21 L. Ed. 745; *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308, 315.

Complaint is made by appellant of the refusal of the court to give certain requested instructions. The court of its own motion instructed the jury very fully as to the law applicable to the case, and appellant has failed to point out any proper instruction that was refused, the substance of which is not covered by the instructions given.

Instructions seven, nine and seventeen, given by the court of its own motion, are objected to by appellant. The seventh instruction is objected to because it ignores the question of assumption of risk and contributory negligence, and does not limit the negligence upon which a recovery may be based to the negligence charged in the complaint. In other instructions the jury was fully and fairly instructed on all of these questions, and the material allegations of the complaint were also pointed out, so that the jury was not misled by the latter part of this instruction, or left to guess at the material allegations of the complaint, as suggested by counsel for appellant.

In the ninth instruction the court stated to the jury that the complaint contained an averment that the defendant was negligent in failing to instruct decedent how to use the appliances named in the complaint, and in

failing to warn him of any danger therefrom. The court was mistaken in stating that the complaint contained such an averment, but as the court in the same instruction informed the jury that the allegation was not a material one, and would not warrant a recovery, even though it was found to be true, we think that appellant could not have been harmed by this misstatement as to the averments of the complaint. A case will not be reversed because of a misstatement by the court of the pleadings as to an immaterial matter. *Kimble* v. *Seal* (1883), 92 Ind. 276. The instruction then proceeds as follows: "But if the evidence shows that decedent was young and inexperienced, of which the defendant's agent had knowledge, then you may consider that fact in determining whether decedent knew of any defects in the chain, hook and fastening device on the car, or whether he could have known of said defects by the exercise of ordinary care, and such other facts and circumstances bearing on the subject as are disclosed by the evidence, and from all these determine whether he had notice or knowledge, or could have had notice by the exercise of ordinary care, of the defective condition of the appliance so furnished to him, if it was defective, and make up your mind as to whether he had knowledge thereof, and therefore assumed the risk." We think that this quoted part of the instruction correctly states the law. The jury had a right to consider the age and experience of decedent as bearing upon the question of assumption of risk.

It is also pointed out that the seventeenth instruction, on the question of the measure of damages, does not expressly inform the jury that the facts upon which it is warranted in basing damages must be found from the evidence. In the course of the instructions the jury was repeatedly told that the plaintiff must prove all of the facts upon which he relied for a recovery before he would be entitled to a verdict. We do not think that the jury was at all misled by this instruction. We have no doubt that every

member of the panel understood that whatever damages were awarded should be based on the facts proved in the case, and that the purpose of this instruction was to direct the attention of the jury to such of those facts as could be properly considered upon the question of damages.    The instructions must be considered as a whole, and when so

14.   considered, if they state the law correctly, a case will not be reversed, even if some one of the instructions considered alone may seem incorrect.    *Wampler* **v.** *House* (1903), 30 Ind. App. 513.

We have carefully considered the questions raised and so ably presented by counsel, and we are of the opinion that there is no reversible error in the record.    The judgment of the trial court is therefore affirmed.