MABEL B. HISER, as Administratrix of the Estate of LAWRENCE R. HISER, Deceased, Respondent, v. JAMES C. DAVIS, Director-General of Railroads, Appellant.

Negligence — master and servant — Federal Employers' Liability Act — ferry between states — when employee repairing building containing boilers used to heat ferry house engaged in helping process of interstate commerce — when decree annulling marriage of intestate and his wife may be reopened after death of intestate and amended so as to adjudge legitimacy of child born to marriage — failure to pass upon legitimacy of child not mistake or inadvertance which might be corrected as such — power of court to reopen case — presumption that court has proceeded advisedly and regularly — amended decree cannot be attacked collaterally.

1. Where in an action under the Federal Employers' Liability Act to recover for the death of plaintiff's intestate alleged to have been occasioned through the negligence of defendant, his employer, it appears that, while intestate was at work upon a building or appliance which was an essential instrumentality in carrying on defendant's business of interstate commerce, he received the injuries from which he died, the jury may properly find that the intestate was engaged in interstate commerce.

2. A building, at the terminus of a ferry between two states, in which are located boilers from which steam is supplied for heating the waiting room, lavatories and ticket offices in the ferry house and also in furnishing hot water for the ferry boats is not an instrumentality so remote from the operations of interstate commerce that the intestate while working thereon could not be said to be engaged in helping to carry on the processes of commerce.

3. Plaintiff, prior to her marriage to intestate, had been married to another man who had disappeared. She claims to have heard that he was dead, but after her marriage to intestate he appeared and procured a judgment of divorce from her on the ground of her adultery with intestate. Intestate likewise procured a judgment annulling his marriage with her because of her former marriage. In the judgment in this latter action no provision was inserted legitimatizing the child which had been born to intestate and plaintiff, as might have been done under the provisions of section 1749, Code of Civil Procedure. Held, that the court had power upon the application of plaintiff, who was the administratrix of intestate and general guardian of the infant,

to open the interlocutory decree in the annulment action and upon proper evidence make findings of good faith in contracting the bigamous marriage and to adjudge the child legitimate in accordance with the provisions of said section.

4. The failure of the court in the annulment action to consider or pass upon the legitimacy of the child was not a clerical mistake or an unsubstantial inadvertence or a failure to reflect in the provisions of the judgment an undisputed and obvious fact which the court had power to correct upon the theory of correcting a mistake or inadvertence, but, subject to the rights of other next of kin, the court had the power, with the original parties present or represented before it, to open the case and consider and pass upon the facts and make the findings and decree which it did. The Code did not require that the infant should be a party to the annulment action but its rights were involved therein, and the decree having failed to pass thereon the court could amend the judgment on the application of one who was the mother and guardian and also a party to the original suit.

5. An objection that with the death of the intestate and the illegitimacy of his child still continuing, the rights of next of kin to damages which might be recovered in this action may have accrued and these rights should not be destroyed by such proceedings to establish legitimacy of the child, cannot be sustained. If we assume that the intestate left next of kin, there is no evidence that such next of kin did not receive due notice of this application with ample protection of their rights, and in the absence of such evidence we must presume that a court of general jurisdiction has proceeded advisedly and regularly.

6. The Supreme Court having jurisdiction to make the findings and decree which it did make, they cannot be collaterally attacked in this action but remain potential and controlling.

*Hiser* v. *Davis*, 201 App. Div. 213, affirmed.

(Argued October 18, 1922; decided November 28, 1922.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 9, 1922, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

*William Mann* and *Alexander S. Lyman* for appellant. Plaintiff's intestate was not engaged in interstate commerce at the time of the accident within the provisions of the Federal Employers' Liability Act. (*Pedersen* v.

*D., L. & W. R. R. Co.,* 229 U. S. 146; *Roush v. B. & O. R. R. Co.,* 243 Fed. Rep. 712; *Philadelphia, B. & W. R. R. Co.* v. *Smith,* 250 U. S. 101; *Erie R. R. Co.* v. *Collins,* 253 U. S. 77; *Erie R. R. Co.* v. *Szary,* 253 U. S. 86; *Buyncofsky* v. *L. V. R. R. Co.,* 228 N. Y. 249; *Vollmers* v. *N. Y. C. R. R. Co.,* 223 N. Y. 571; *Gallagher* v. *N. Y. C. R. R. Co.,* 180 App. Div. 88; *Shanks* v. *D., L. & W. R. R. Co.,* 214 N. Y. 413; 239 U. S. 556; *I. C. R. R. Co.* v. *Cousins,* 241 U. S. 641; *M. & S. L. R. R. Co.* v. *Nash,* 242 U. S. 619; *B. & O. R. R. Co.* v. *Branson,* 242 U. S. 623.) Plaintiff is not entitled to recover damages on behalf of Lavinnie Ruth Hiser. (*Seaboard Air Line* v. *Kenney,* 240 U. S. 489; *Bell* v. *Terry & Tench Co.,* 177 App. Div. 123; *Gall* v. *Gall,* 114 N. Y. 109; *Stokes* v. *Stokes,* 198 N. Y. 301; *Bayliss* v. *Bayliss,* 146 App. Div. 517.)

*Thomas J. O'Neill* and *Leonard F. Fish* for respondent. The defendant was engaged in interstate commerce and the plaintiff's intestate was also engaged in interstate commerce or work so closely related to it as to be a part thereof. (*Erie R. R. Co.* v. *Collins,* 253 U. S. 77; *Roush* v. *B. & O. R. R. Co.,* 243 Fed. Rep. 712; *Pedersen* v. *D., L. & W. R. R. Co.,* 229 U. S. 146; *Thomas* v. *B. & M. Railroad,* 219 Fed. Rep. 180; *Eng* v. *S. P. R. R. Co.,* 210 Fed. Rep. 92; *Erie R. R. Co.* v. *Szary,* 253 U. S. 86; *Matter of Guida,* 183 App. Div. 822; 224 N. Y. 712.) The ruling of the trial court that the plaintiff was entitled to recover damages on behalf of Lavinnie Ruth Hiser was right. (Code Civ. Pro. § 1749; *Gennert* v. *Butterick Co.,* 133 App. Div. 86; *Bohlen* v. *M. E. Ry. Co.,* 121 N. Y. 546; *Stokes* v. *Stokes,* 198 N. Y. 301; *Baylis* v. *Baylis,* 146 App. Div. 517.)

HISCOCK, Ch. J. This action was brought under the Federal Employers' Liability Act to recover damages for the death of plaintiff's intestate alleged to have been

caused by the negligence of the defendant. On this appeal two propositions of substance have been argued. They are the ones, *first*, that intestate at the time of his injury and death was not engaged in interstate commerce and, *second*, that no recovery was permissible in behalf of the intestate's alleged child for whose benefit alone recovery was allowed.

In the brief presented upon this appeal no exception is specified which survives unanimous affirmance and presents the question whether intestate was engaged in interstate commerce at the time of his death. On the argument, however, our attention was called to an exception which it is claimed does present this question and I shall assume for the purposes of this discussion that such is the situation of the appeal. Assuming this, nevertheless, I think that the evidence permitted the jury to find that the intestate was engaged in interstate commerce and that, therefore, action might be brought under the Federal statute.

The defendant was engaged in operating a ferry between the foot of Forty-second street, New York city, and Weehawken, New Jersey. This, of course, was interstate commerce. It had a building at the New York terminus in which were located boilers and from these boilers steam was supplied for heating the waiting room, lavatories and ticket offices in the ferry house adjacently located, and also in furnishing hot water for the ferry boats. Intestate was one of a gang of men who were engaged in removing an old smoke stack upon the boiler building for the purpose of replacing it with a new one. While he was thus engaged one of defendant's ferry boats entered the slip, as claimed without any appropriate warning, and intestate was caught between the apron, so called, and the dock and was so injured that he died. We thus have it that the intestate was at work upon a building or appliance which was an essential instrumentality in carrying on defendant's business of inter-

state commerce. It was not in my opinion an instru-
mentality so remote from the operations of interstate
commerce that the intestate while working thereon could
not be said to be engaged in helping to carry on the
processes of commerce. (*Erie R. R. Co.* v. *Collins*, 253
U. S. 77; *Pedersen* v. *D., L. & W. R. R. Co.*, 229 U. S.
146; *Shanks* v. *D., L. & W. R. R. Co.*, 239 U. S. 556;
*Matter of Guida* v. *Penn. R. R. Co.*, 224 N. Y. 712.)

The other proposition urged by appellant is much
more troublesome. Plaintiff was married to a man named
Burke. After having two children by her Burke aban-
doned her and entered the war and thereafter plaintiff
claims to have heard from his brother that he was dead.
Then after a short interval she married the intestate by
whom she had a child in 1918. Intermediate her marriage
to the intestate and the birth of said child her former
husband appeared and commenced an action against her
for divorce in which he obtained the ordinary judgment
dissolving the marriage on the ground of adultery. After
Burke's reappearance intestate commenced an action
against plaintiff for the annulment of his marriage with
her which, of course, was bigamous and an interlocutory
decree was entered therein annulling the same. At the
time this decree was entered section 1749 of the Code
of Civil Procedure provided: " If a marriage be declared
a nullity or annulled upon the ground that the former
husband or wife of one of the parties was living, the
former marriage being in force, if it appears, and the
judgment determines, that the subsequent marriage was
contracted by at least one of the parties thereto in good
faith, and with the full belief that the former husband or
wife was dead or that the former marriage had been
annulled or dissolved, or without any knowledge on the
part of the innocent party of such former marriage, a
child of such subsequent marriage is deemed the legitimate
child of the parent who at the time of the marriage was
competent to contract. If either or both parties to such

subsequent marriage were incompetent to contract, the court by the judgment may decide that a child of the marriage is the legitimate child of such an incompetent."

The evidence before us indicates that the court might fairly have found that intestate contracted his marriage with plaintiff in good faith and upon this finding it might properly have adjudicated that his child by her was legitimate. Through the ignorance or indifference of counsel, however, the court apparently did not consider this phase of the case; it made no finding upon the subject and its judgment contained no provision legitimatizing the infant, and such was the situation at the time intestate was killed.

The Federal Employers' Liability Act, section 1, provides that "every common carrier by railroad while engaging in commerce between any of the several States; * * * shall be liable * * * in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such * * * death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *."

The interpretation of the word " child " or " children " in such a Federal statute as including or not illegitimate children depends upon the law of the state wherein the statute is being enforced. (*Seaboard Air Line* v. *Kenney*, 240 U. S. 489.) It is not claimed by respondent that under the law in this state the word " child " in a statute or will, without any other description, would include an illegitimate child. It would be useless for her to make any such contention because the law is the other way. (*Matter of Bell* v. *Terry & Tench Co.*, 177 App. Div. 123 and cases cited; Decedent Estate Law [Cons. Laws, ch. 13], secs. 89, 98, subd. 15.)

20

With the death of intestate and the desire to recover therefor under the Federal statute for the benefit of his infant child realization came to plaintiff and her then counsel of the serious omission which impaired the judgment in the annulment suit through failure to procure findings and decree legitimatizing such child. Plaintiff thereupon procured herself to be appointed administratrix of intestate and also general guardian of the child, and application was made to the Supreme Court in which the annulment suit was pending to open the interlocutory decree and the proceedings in said action so as to permit the appropriate findings and decretal provisions legitimatizing the child under the section of the Code heretofore referred to. This application was granted. Appropriate findings of good faith on the part of both parties in contracting said marriage were made and a provision inserted in the interlocutory decree adjudging that the infant was their legitimate child. Subsequently, final judgment was entered in accordance with said interlocutory decree.

This case coming on for trial on these facts plaintiff was allowed to recover damages for the death of her intestate solely for the benefit of his child, and if that was not permissible the judgment cannot stand. Appellant urges that the court was without jurisdiction to entertain the application above described and to make the findings and decree which it did make and that, therefore, such proceedings were entirely void and without effect in establishing a status for the child as that of one in whose behalf a recovery may be had under the Federal statutes. It is argued in answer to this and has been held by the Appellate Division that what the court did was only to correct one of those mistakes or inadvertent omissions which it is well settled the Supreme Court may correct. I am, however, unable to agree with this view. This power of amendment or correction only extends to clerical and obvious mistakes and omissions where it is perfectly evident that the court through inadvertence has failed

to carry out in the details of its judgment some obvious and undisputed fact. (*Heath* v. *N. Y. B. L. B. Co.*, 146 N. Y. 260; *Bohlen* v. *Metr. El. R. Co.*, 121 N. Y. 546; *Gennert* v. *Butterick Publishing Co., Ltd.*, 133 App. Div. 86.) That in my judgment is not this case at all. Under the statute the attempt has been made to enable the courts to protect the future of children produced by an illegal alliance and to save them from the brand of illegitimacy which would otherwise come from the unlawful acts of those who had produced them. It was a novel, independent and substantial form of relief which the courts were empowered to grant in an action of annulment. The court in this case utterly failed to consider that branch of the action, pass upon the merits thereof, and, if the merits brought the parties within the provisions of the act, to decree that the child produced by their union should be legitimate. That was not a clerical mistake or an unsubstantial inadvertence or a failure to reflect in the provisions of the judgment an undisputed and obvious fact. In fact the evidence as disclosed to us as showing that this plaintiff contracted her bigamous marriage in good faith is very thin. And, therefore, the court did not have the power under the familiar rules referred to to amend and correct its action.

It also may be debated whether relief can be given in this present action under the Code provision in question. Personally I do not believe it can be. Under the common law and every controlling rule that I am aware of the child if illegitimate will be illegitimate unless this condition can be cured under the specified provision of the Code and that provision of the Code expressly requires that the question of good faith of the parents must be settled and the decree of legitimacy made in the annulment action. It is at least questionable whether there is any authority which permits us to disregard this limitation imposed by the legislature and permit something to be done in behalf of the infant in another action

than the one in which by the statute it is required to be done.

· Therefore, we come to the question whether the court had power to open the interlocutory decree and proceedings in the annulment action and make the findings and provisions which it did make on any other theory than that of correcting a mistake or an inadvertence. I am inclined to think that it did. I suppose there is no question but that if intestate had lived the court would have had the power on the application or consent of both him and plaintiff to open said judgment and proceedings and pass upon the issue of good faith and, if found, decree the legitimacy of the child. The man, however, had died before the application but the application was made by plaintiff who had been appointed the administratrix of the intestate and general guardian of the infant. As I have said the rights which the court was permitted to protect in such an action were of a peculiar nature. They were not so much the rights of the people who were parties to the action as the rights of the infant. Interest in the matter did not die with the death of the intestate but it survived in a very lively and real way with the infant. It is quite possible that they could be protected nowhere else than in that action. Subject to the rights of other next of kin hereafter to be discussed it seems to me that the court had the power with the original parties thus present or represented before it to open the case and consider and pass upon the facts and make the findings and decree which it did. The Code did not require that the infant should be a party to the annulment action but its rights were involved therein, and the decree having failed to pass thereon we think that the court could amend the judgment on the application of one who was its mother and guardian and also a party to the original suit. (*Lumpkin* v. *Lumpkin*, 108 Md. 470; *Nat. Power & Paper Co.* v. *Rossman*, 122 Minn. 355; *Wood* v. *Wood*, 136 Ia. 128.)

The outstanding objection which occurs to the mind is that with the death of the intestate and the illegitimacy of his child still continuing, the rights of next of kin to damages which might be recovered in this action may have accrued and these rights should not be destroyed by such proceedings as I have ·described.   The answer to that is a simple one.   If we assume that the intestate left next of kin (Lawson's Presumptive Ev. [2d ed.] p. 249) there is no evidence that such next of kin did not receive due notice of this application with ample protection of their rights and in the absence of such evidence we must presume that a court of general jurisdiction has proceeded advisedly and regularly.   (*Smith* v. *Central Trust Co. of N. Y.*, 154 N. Y. 333; *Steinhardt* v. *Baker*, 163 N. Y. 410.)

If this course of reasoning is correct the Supreme Court had such jurisdiction to make the findings and decree which it did make, that they cannot be collaterally attacked in this action but remain potential and controlling.   Even if it should be assumed that the court exceeded its powers it is doubtful whether its decree can be attacked collaterally in this action.   (*Stannard* v. *Hubbell*, 123 N. Y. 520; *Audubon* v. *Excelsior Ins. Co.*, 27 N. Y. 216.)

I think the judgment should be affirmed, with costs.

HOGAN, CARDOZO, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment affirmed.