## MIDDLETON v. LUCKENBACH S. S. CO., Inc., et al.
### No. 356.

Circuit Court of Appeals, Second Circuit.
April 9, 1934.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (W. H. McGrann and J. H. Turnure, both of New York City, of counsel), for appellant, Luckenbach S. S. Co., Inc.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for libelant-appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

In a collision occurring June 19, 1931, 40 miles south of Castle Island, British West Indies, the schooner Arawak was sunk by appellant's vessel Robert Luckenbach, causing the death of appellee's intestates Gerald Wilson, a seaman, Constance Lockhart, the master's sister, and Ethel Lockhart, wife of the schooner's mate. The three who lost their lives were British subjects and were domiciled at Ragged Island, B. W. I.

The Robert Luckenbach picked up the survivors and brought them to Philadelphia,

Pa. Appellee, an attorney connected with the British Consul General in Philadelphia, was appointed, in Pennsylvania, administrator of the estate of the three persons thus drowned, and later ancillary letters were issued to him in New York.

Gerald Wilson was the illegitimate son of Frances Wilson. He left surviving his mother, a wife, and five children, the youngest born posthumously. The eldest child was born six months before his parents were married. Constance Lockhart was the illegitimate daughter of Charlotte Moxey who survived her. Ethel Lockhart left a husband and an illegitimate son by another.

The questions presented are (a) Can an illegitimate child recover damages for the death of its mother, and is the mother of such a child entitled to recover damages for its death under sections 1 and 4 of the Federal Death Act? and (b) Is Gerald Wilson's oldest child entitled to an award of damages? 46 USCA §§ 761, 764.

■ The statute is applicable to deaths due to collision occurring on the high seas. The Buenos Aires, 5 F.(2d) 425 (C. C. A. 2). See, also, The Scotland, 105 U. S. 24, 26 L. Ed. 1001; The Belgenland, 114 U. S. 355, 5 S. Ct. 860, 29 L. Ed. 152.

Sections 1 and 4 of the Federal Death Act, upon which this action rests, provide:

Section 1. "Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

Section 4. "Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding."

Below the commissioner deemed the law of Ragged Island controlling; and, in the absence of proof of the law of that jurisdiction, the persons to be benefited might look to the law of Pennsylvania, which undertook to afford the remedy to the claimants, and, although the administrator sued in New York, he held that the New York law was not applicable. The court below held that the appellant could recover under the law of New York, the lex fori; there being no proof of the law of any foreign country.

■ The next of kin of the person meeting an accidental death by wrongful act recovers, not by right of succession, but by statutory provision. Michigan Central Ry. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; Stewart v. B. & O. R. R., 168 U. S. 445, 18 S. Ct. 105, 42 L. Ed. 537. Spokane & Inland Empire R. R. v. Whitley, 237 U. S. 487, 35 S. Ct. 655, 59 L. Ed. 1060, L. R. A. 1916F, 736, dealt with a full faith and credit question regarding recovery for death under a statute of Idaho. The deceased was a resident of Tennessee, and the action for his death was controlled by the Idaho death statute (Rev. Codes, § 4100). His wife was appointed administratrix in Tennessee, and his mother brought suit for his death in Idaho. They were both heirs of the deceased under the Idaho law. The mother petitioned the probate court of Tennessee for one-half of the amount which was to be paid to the administratrix under a settlement reached with the railway company, but the petition was refused. The wife brought suit in the state of Washington; the Supreme Court of Idaho having in the meantime rendered a judgment in the mother's favor. 23 Idaho, 642, 132 P. 121. The court held that the laws of Idaho and not of Tennessee governed as to who should recover as the death occurred in Idaho. If the laws of Tennessee where the decedent was domiciled were inapplicable in this case, it would seem to follow that the laws of the Bahamas where the decedents were domiciled were likewise inapplicable.

The District Judge held that the words of the statute "dependent relative" included an illegitimate child or its mother, and said it was unnecessary to decide whether an illegitimate child and its mother were child and parent, respectively, within the act. The act does not define "relative" as there used. Under the principle of Seaboard Air Line v. Kenney, 240 U. S. 489, 36 S. Ct. 458, 460, 60 L. Ed. 762, who were the "next of kin" as used in the Federal Employers' Liability Act (45 USCA § 51 et seq.) must be determined "by the legislation of the various states to whose authority that subject is normally committed."

In the Kenney Case, the intestate, a switchman, was killed in North Carolina, on an interstate freight train, and the suit was brought for his next of kin who were three minor children of the mother of the deceased; she having died before the accident. He was an illegitimate child. The state statute (Revisal 1905, § 137) provided that illegitimate children born of the same mother should be considered legitimate as between themselves, and, in the case of the death of any such child, his estate was to be distributed among such persons as would be his next of kin, including his mother, as if all such had been born in lawful wedlock. The court held that the law of the state of North Carolina would determine who were the next of kin.

The rule is quite universal in the state jurisdictions that the word "relative" embraces the persons who would take under a statute of distribution and descent in case of intestacy. Gallagher v. Crooks, 132 N. Y. 338, 30 N. E. 746; Thompson v. Thornton, 197 Mass. 273, 83 N. E. 880; Rauch v. Metz (Mo. Sup.) 212 S. W. 353; In re Trickett's Estate, 197 Cal. 20, 239 P. 406. The law of Pennsylvania permits a mother of an illegitimate child or such illegitimate child to inherit from or through each other. Laws of 1901, Act No. 325, P. L. 639, § 2. The New York Decedents Estate Law (Consol. Laws, c. 13), §§ 89 and 98 (now incorporated in Supplement to the Decedents' Estate Law, § 83) contains similar provisions. Thus, by virtue of the right to take under the statute of distribution and descent in New York, an illegitimate child and its mother are not only relatives, but are parent and child within the meaning of such legislation.

Since the occurrence here was on the high seas, the law of the admiralty controls and rights must be governed by federal law. Prior to the Federal Death Act of 1920 (46 USCA § 761 et seq.), there was no remedy provided by the general maritime law for death on the high seas. Western Fuel Co. v. Garcia, 257 U. S. 233, 42 S. Ct. 89, 66 L. Ed. 210. Recovery here must be predicated upon the act providing the right. Provision is made therein for the recovery by a parent, child, or dependent relative, and we must answer as to whether these words include parents of illegitimate children and illegitimate children. Taken in their ordinary meaning, as distinguished from their legal meaning, they are parent, child, and dependent relative. The word "child" is defined in legal dictionaries as meaning a "legitimate child." Bouvier's Law Dictionary, vol. 1, p. 479. The origin of that construction came from the consideration of wills, deeds, and statutes of inheritance, which differ from the question here under consideration. Other considerations are presented in recovering damages for loss of life. See "The Effect of Statutes Altering the Position of Illegitimate Children on Judicial Construction of Wills," 45 Harvard Law Review, 941. It is argued that, because of such ambiguity and in the absence of legislative definition, to determine the purpose of Congress, we should look to other law, that the purpose of Congress was to leave to the state the law respecting distribution. Seaboard Air Line v. Kenney, 240 U. S. 491, 36 S. Ct. 458, 60 L. Ed. 762. When we consider what law should be applied, difficulties arise. If the common law was not to be applied in Seaboard Air Line Ry. v. Kenney, supra, a fortiori, it is not to be applied in this, an admiralty case. If we apply the New York law as the lex fori, we can only do so by indulging in the presumption that the law of the Bahamas is the same as that of the forum, and, although such a presumption has been made where the law of the forum has been changed by statute, McMillan v. Amer. Express, 123 Iowa, 236, 98 N. W. 629, the more generally accepted doctrine, where the forum has a statute, is to presume that the foreign law is the same as the law of the forum before the statutory change was made. Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40; Commonwealth v. Graham, 157 Mass. 73, 31 N. E. 706, 16 L. R. A. 578, 34 Am. St. Rep. 255; Flagg v. Baldwin, 38 N. J. Eq. 219, 48 Am. Rep. 308. Indulging in presumptions has not received full approbation. See "Presumption of the Foreign Law," 19 Harvard Law Review, 401. Their legal efficacy we need not here consider. The national courts are clear in stating that the law of the forum is not to be applied where the foreign jurisdiction is not governed by the common law. Cuban R. R. Co. v. Crosby, supra; Slater v. Mexican Natl. Ry., 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900.

In Seaboard Air Line v. Kenney, supra, it was held the state law applied, but the accident occurred and the suit was brought in North Carolina; the transaction had a substantial contact with the state, whereas in this type of case there can be no such contact, for the occurrence must be on the high seas, and the federal law obtains as the law of the place where the wrong occurred. The law of the forum might be a matter of choice, or be purely fortuitous and depend upon the ability to obtain jurisdiction, and in such

case substantial rights would be affected by some unsubstantial connection. Thus the lex fori is an undesirable choice.

To allow the law of the state of the decedent's domicile to prevail would permit and deny for the same accident a right of recovery to relatives who were similarly related to persons killed because of residence in different jurisdictions, and this, despite the fact that the words are not ambiguous in themselves but have been made so only by reason of past public policy.

In the federal statute we are considering, there are no words requiring a mandate of a state Legislature to inform us as to their meaning; no local law is necessary. The words are to be construed by judicial determination, since there is no legislative definition of a parent or child such as is to be found and which is necessary in a "next of kin" statute. Unlike the statutes wherein the words "next of kin" are used and which therefore might require legislative interpretation, the statutes using the words "parent and child" have, in the cases, received interpretation by the judiciary alone.

An intention which would result in diversity and lack uniformity is not to be attributed to the Legislature where the statute is federal and is to govern only when the act occurs on the high seas, beyond a marine league from shore—area wherein jurisdiction is exclusive to the admiralty. It was not intended that a right be created in any particular jurisdiction where other law prevailed. Unlike the Federal Employers' Liability Act which provides for concurrent jurisdiction, state and federal (45 U. S. C. § 56 [45 US CA § 56]) and under which act the Kenney Case arose, this act does not declare that jurisdiction be concurrent (46 U. S. C. § 761 [46 USCA § 761]). The fact that Congress in one statute used the words "next of kin" and in the other specifically named the beneficiaries, indicates that the courts were not to turn to the state law to determine who came within the act. Apparently Congress intended to avoid words of art so that there be uniform construction without recourse to state law. With that intention, Congress followed the general principle of conflict of law; namely, that, since the statute of the sovereign creates the right of action for a statutory tort, the sovereign therefore determines to whom the cause of action should be given. Spokane & Island Empire R. R. Co. v. Whitley, supra; Penn. R. Co. v. Levine, 263 F. 557 (C. C. A. 2).

We must look necessarily to the statute and not to state legislative decrees to determine who may recover, but aid may be obtained from judicial determination of the meaning of similar statutes in other jurisdictions. In turning to the decisions, we are met with conflict. A case of authority and influence in solving the question as it arose in the various states is the English case of Dickinson v. Northeastern Ry. Co., 9 Law Times Reports, 299 (1863). It was there held that an illegitimate child was not a child within the meaning of the statute which gave a right of action for wrongful death. The decisions in the following cases adopted an attitude in accord with that of the English court: Washington, B. A. Ry. v. State, 136 Md. 103, 111 A. 164; State v. Hagerstown Ry., 139 Md. 78, 114 A. 729; Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L. R. A. (N. S.) 480, 118 Am. St. Rep. 391, 10 Ann. Cas. 807.

In Good v. Towns, 56 Vt. 410, 48 Am. Rep. 799, an act providing for recovery by "the person who is in any way dependent upon" the deceased was considered so as to exclude an illegitimate, although the child was in fact being supported by the deceased. In contrast to these decisions, other courts have displayed a more liberal policy. Croft v. So. Cotton Oil Co., 83 S. C. 232, 65 S. E. 216; L. T. Dickason Coal Co. v. Liddil, 49 Ind. App. 40, 94 N. E. 411; Hadley v. City of Tallahassee, 67 Fla. 436, 65 So. 545, Ann. Cas. 1916C, 719; Andrzejewski v. Northwestern Fuel Co., 158 Wis. 170, 148 N. W. 37; Marshall v. Industrial Commission, 342 Ill. 400, 174 N. E. 534; Marshall v. Wabash Ry., 120 Mo. 275, 25 S. W. 179.

While some of these latter decisions were based upon statutes declaring illegitimates next of kin of the mother, they are of importance as indicating a present day point of view. In Roberts v. Whaley, 192 Mich. 133, 158 N. W. 209, L. R. A. 1918A, 189, illegitimates were allowed to share in an award under the Workmen's Compensation Act which granted awards to dependents (Pub. Acts 1912, No. 10, pt. 2, § 5). Contra, Bell v. Terry & Tench, 177 App. Div. 123, 163 N. Y. S. 733, since changed by statute, section 2, subd. 11, New York Workmen's Compensation Law (Consol. Laws c. 67). See, also, Hiser v. Davis, 234 N. Y. 300, 137 N. E. 596.

There is no right of inheritance involved here. It is a statute that confers recovery upon dependents, not for the benefit of an estate, but for those who by our standards are legally or morally entitled to sup-

port. Humane considerations and the realization that children are such no matter what their origin alone might compel us to the construction that, under present day conditions, our social attitude warrants a construction different from that of the early English view. The purpose and object of the statute is to continue the support of dependents after a casualty. To hold that these children or the parents do not come within the terms of the act would be to defeat the purposes of the act. The benefit conferred beyond being for such beneficiaries is for society's welfare in making provision for the support of those who might otherwise become dependent. The rule that a bastard is nullius filius applies only in cases of inheritance. Even in that situation we have made very considerable advances toward giving illegitimates the right of capacity to inherit by admitting them to possess inheritable blood. 2 Kent's Commentaries (12th Ed.) 215.

■ Under the act of 1920, recovery is for fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought. The same rule of damages is provided for in the Federal Employers' Liability Act, and, in considering the measure of that responsibility, the Supreme Court said, in Chesapeake & Ohio Ry. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 631, 60 L. Ed. 1117, "The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased." There may be no allowance for loss of society and companionship. Michigan Central R. R. v. Vreeland, 227 U. S. 59, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176.

■ Gerald Wilson was 28 years old when he died; he left his mother, wife, and five infant children. The mother was awarded $1,-500, the wife, $5,000, and the children $5,-000 in the aggregate. Mother and wife testified that he earned from £14 to £19 a month, although previously his wife testified that he had earned £13 per month. There is considerable doubt as to these earnings. He was employed as a seaman and working on shares on the schooner which sunk. His earnings depended upon the success of the ventures of that vessel. He received one and a half shares of the vessel's net profits. Anton Lockhart, the mate of the vessel for four months preceding the collision, admitted that during that period he had not received any pay and that the others working on shares, including Gerald Wilson, had not received any compensation. The cargo of fish caught during that period was worth from four to five hundred dollars, in which a crew of nine men were to share. The owner of the schooner indicated that Wilson's income would not have continued at any such rate as £12 or £15 a month, assuming that at one time he received that much. The mate, superior in position to that of the decedent, received but £3 or £4 per month. Under these circumstances, the testimony supporting the claim that he was contributing from £10 to £13 per month to his wife and family and £3 a month to his mother is incredible. His mother was 63 years old, with an expectancy of life of 13.7. In view of the probable earnings of the deceased, we are unable to find that he could give the support as claimed to his mother. She lived with him, which is an additional reason for doubting that he made these contributions. We think an allowance to her of $1,000 and an allowance to his wife of $3,000 is fully compensatory; we are satisfied that each of the children is entitled to damages, and an allowance of $500 to each will be granted.

■ The award of $3,000 to Charlotte Moxey for the death of her illegitimate daughter, Constance, we think too high. This allowance was based upon the testimony that she contributed from £3 to £5 per month to her support. She was employed and received wages of but £3 to £5 per month. If she made the contribution as claimed, she gave all to her mother with whom she did not live. She was not constantly employed. An average of £4 per month would be £48 per year, and, if she contributed one half of her earnings to her mother, which would be a liberal assumption, a 5 per cent. annuity would make this award, considering her expectancy of life (she was 48 years old; 18.75), $1,500, and such an award will be allowed.

We agree with the awards allowed for the death of Ethel Lockhart to her husband and son.

The decree will be modified accordingly.